**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| WILLIAM JOHN MCBRIDE, JR.,<br><br>*Plaintiff*,<br><br>v.<br><br>FINANCIAL INDUSTRY REGULATORY AUTHORITY, INC.,<br><br>*Defendant*. | Case No. 25-cv-960 (ACR) |

**MEMORANDUM OPINION AND ORDER**

Like many professionals, Plaintiff William John McBride, Jr., received the occasional negative review. Because he is a broker, the Securities Exchange Act of 1934 (Exchange Act) requires the disclosure of the five customer complaints he has accumulated since 2008 in an online system accessible to the public. Plaintiff sued the Financial Industry Regulatory Authority (FINRA), the entity responsible for maintaining the system, seeking to expunge those complaints from his records.

However, for the reasons described below, no federal law authorizes such a suit. Accordingly, the Court **GRANTS** FINRA's Motion to Dismiss, Dkt. 19.

## I. BACKGROUND

### A. FINRA

The federal government and private entities, known as self-regulatory organizations (SROs), work together to regulate the securities industry. SROs "date back centuries to when groups of securities traders adopted self-governing rules by which they would conduct business

and ensure public trust in their operations." *Alpine Sec. Corp. v. FINRA*, 121 F.4th 1314, 1318 (D.C. Cir. 2024).

FINRA, a private, not-for-profit Delaware corporation, is an SRO that "regulates and oversees large parts of the securities industry" as the only (currently) registered national securities association under the Exchange Act, as amended, 15 U.S.C. § 78o-3. *Alpine Sec. Corp*, 121 F.4th at 1318, 1321.[1] The Act sets forth a "regulatory model" for the securities industry that "depends on the [Securities and Exchange Commission's (SEC's)] delegation of certain governmental functions to" FINRA. *In re Series 7 Broker Qualification Exam Scoring Litig.*, 548 F.3d 110, 114 (D.C. Cir. 2008). At the same time, the SEC performs oversight. *See* 15 U.S.C. § 78s. So, for example, it must approve all FINRA rules. *See id*. § 78s(b).

FINRA, in turn, regulates most firms and individuals that trade securities, because "federal law effectively requires" that they "join FINRA as a condition of engaging in that business." *Alpine Sec. Corp.*, 121 F.4th at 1318.[2] "When its member brokers or associated persons violate FINRA's rules, FINRA disciplines them pursuant to the Exchange Act's requirements." *Turbeville v. FINRA*, 874 F.3d 1268, 1271 (11th Cir. 2017).

As relevant here, FINRA must "maintain a system for collecting and retaining registration information" of member firms and associated persons, including brokers. 15 U.S.C. § 78o-3(i)(1)(A). Such registration information includes "disciplinary actions, regulatory, judicial, and arbitration proceedings, and other information required by law, or exchange or

---

[1] FINRA was formed after the SEC approved a merger between the National Association of Securities Dealers, the first registered securities association in 1939, and the New York Stock Exchange's enforcement arm. *See Alpine Sec. Corp.*, 121 F.4th at 1321.

[2] Private individuals, rather than government employees, operate FINRA. *See Alpine Sec. Corp.*, 121 F.4th at 1321. FINRA accepts no government funding, but rather funds itself through "fees, fines, penalties, and sanctions levied against its members." *Id.*

association rule," as well as "the source and status of such information." *Id.* § 78o-3(i)(5). In addition, FINRA must "adopt rules establishing an administrative process for disputing the accuracy of information provided." *Id.* § 78o-3(i)(3).

FINRA aggregates this information in an electronic database known as the Central Registration Depository (CRD). Consistent with its statutory duties, FINRA also makes certain information from the CRD available to the public through an online investor protection tool, BrokerCheck. *See* SEC Release No. 34-62476, 75 Fed. Reg. 41254, 41254 (Jul. 15, 2010); *see also* § 15 U.S.C. 78o-3(i) (mandating that FINRA "establish . . . a readily accessible electronic or other process[] to receive and promptly respond to inquiries regarding registration information on [FINRA's] members and their associated persons").[3]

"[I]nformation disclosed on BrokerCheck includes summary descriptions of complaints lodged by aggrieved customers against individual brokers alleged to have committed sales practice violations, known as 'customer dispute' information." *Tuberosa v. FINRA.*, No. CV 25-963 (BAH), 2026 WL 25831, at *2 (D.D.C. Jan. 5, 2026). Altogether, such information helps investors make informed decisions about brokers they may hire. *See* 87 Fed. Reg. 50170, 50172 (Aug. 15, 2022).

Brokers are not helpless, however, when faced with inaccurate disclosures. FINRA Rules 2080, 12805, and 13805 set forth standards for the expungement of customer dispute information. But because "[b]oth regulators and the investing public are disadvantaged when factual information is removed from the CRD," a regulated party must clear a "high" bar. 79 Fed. Reg. 43809, 43812–13 (July 28, 2014). In general, expungement "requir[es] a finding that

[3] The BrokerCheck database is available at *BrokerCheck by FINRA*, https://brokercheck.finra.org.

the claim or allegation is factually impossible, clearly erroneous or false, or that the registered person was not involved in the alleged wrongdoing." *Id*. at 43812. FINRA Rule 8312(b)(2)(D) also provides a non-expungement remedy: regulated parties may submit "Broker Comments" in BrokerCheck providing context concerning a customer complaint.

**B. Procedural Background**

Plaintiff is a broker who first registered with FINRA in 1998. *See* Dkt. 19-3 (McBride BrokerCheck Report).[4] He has since worked for seven member firms. *Id*. at 8. In this action, he seeks to expunge from the CRD five customer dispute disclosures stemming from events occurring between 2005 and 2018. *See* Dkt. 1 at 9–24; McBride BrokerCheck Report at 10–16.

As required, the broker-dealer firms for which McBride worked reported the complaints to FINRA. Dkt. 1 at 9–24.[5] Because BrokerCheck duplicates certain information within the CRD, summaries of the complaints appear in both places. *Id*. at 10–16; *see* FINRA Rule 8312 (governing FINRA's release of certain disclosures through BrokerCheck). For one of the five complaints, McBride submitted a Broker Comment in BrokerCheck. *See* McBride BrokerCheck Report at 12; FINRA Rule 8312(b)(2)(D).

McBride first sued FINRA for expungement in the District of Columbia Superior Court. *See McBride v. FINRA*, D.C. Super. Ct. No. 2024-CAB-004697. Before an adjudication on the

[4] The Court may consider the BrokerCheck Report because the Complaint incorporates it by reference. *See Hurd v. District of Columbia*, 864 F.3d 671, 686 (D.C. Cir. 2017); Dkt. 1 at 9–24. In any event, none of the information in that document contradicts information in the Complaint or is dispositive for purposes of adjudicating FINRA's Motion to Dismiss.

[5] For purposes of adjudicating Defendant's Motion to Dismiss, the Court takes all the allegations in the Complaint as true. *See Air Excursions LLC v. Yellen*, 66 F.4th 272, 277 (D.C. Cir. 2023).

merits, on September 4, 2024, he voluntarily dismissed the case. *See id.*, Notice to Court to Dismiss (Sept. 4, 2024).[6] Plaintiff then filed this action.

McBride's Complaint asserts that the disclosures contain "false, clearly erroneous, and misleading" information about him. Dkt. 1 at 25. He claims that the disclosures "defam[e]" him and "mislead the public, employers, and regulators." *Id*. at 27. He therefore requests the "equitable relief [of] expungement," and a declaratory judgment and a permanent injunction with the same effect, "pursuant to the Court's inherent equitable power and/or pursuant to FINRA rules." *Id*. at 24–32.

FINRA moves to dismiss. It claims that Plaintiff lacks a cause of action under any applicable federal law. *See* Dkt. 19-1 (MTD) at 18–26. On November 20, 2025, the Court held a motion hearing.

Since that hearing, another federal district court in the District of Columbia has issued an opinion concerning the same legal issues.[7] In *Tuberosa v. FINRA*, the district court granted FINRA's motion to dismiss on the grounds that the plaintiff there lacked a cause of action and the court could not exercise its purported "equitable powers" to expunge plaintiff's CRD records. 2026 WL 25831, at *4–7. Though Tuberosa initially appealed to the D.C. Circuit, he voluntarily withdrew the appeal before an appellate decision on the merits. *See Tuberosa v. FINRA*, No. 26-7012, 2026 WL 2055569 (D.C. Cir. July 10, 2026).

The Court concurs with the *Tuberosa* court's reasoning in full. Without a viable cause of action before it, the Court cannot provide McBride expungement relief.

---

[6] McBride did so shortly after the District of Columbia Court of Appeals decided, in a similar case, that the District of Columbia Superior Court lacks jurisdiction over expungement claims, which implicate federal questions, under the Exchange Act. *See Sum-Slaughter v. FINRA*, 320 A.3d 313, 324 (D.C. 2024).

[7] The D.C. Circuit has yet to weigh in.

## II. LEGAL STANDARD

On a motion to dismiss, the Court considers whether Plaintiff "state[d] a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). In so doing, the Court must take all factual allegations as true. *See Ashcroft v. Iqbal*, 556 U.S. 662, 669 (2009).

Importantly, "a plaintiff who fails to show that the law authorizes him to bring his lawsuit fails to state a claim upon which relief can be granted." *Eagle Tr. Fund v. U.S. Postal Serv.*, 365 F. Supp. 3d 57, 63 (D.D.C. 2019) (Jackson, J.), *aff'd*, 811 F. App'x 669 (D.C. Cir. 2020); *see Sacks v. Reynolds Sec., Inc.*, 593 F.2d 1234, 1239 (D.C. Cir. 1978).

## III. ANALYSIS

Plaintiff has not established a cause of action under any applicable statute. Indeed, he concedes the Exchange Act supplies none. But he contends that FINRA Rules and the Court's equity power make up for this deficit. They do not—for the reasons the Court articulates below.

### A. The Exchange Act Does Not Supply Plaintiff a Cause of Action

Plaintiff has not pointed to a provision of the Exchange Act that authorizes a private right of action to expunge his CRD records. In fact, at the motion hearing, Plaintiff's counsel specifically disclaimed "rel[iance] . . . on the Exchange Act or on any specific provision of it" for such purposes. Dkt. 24 (MTD Hr'g Tr.) at 10.

Neither does the Court independently discern a statutory cause of action. The Exchange Act establishes a comprehensive scheme for regulating the securities industry. *See In re Series 7 Broker Qualification Exam Scoring Litig.*, 548 F.3d at 114. So, for example, the Act provides that FINRA must maintain a system containing members' "registration information," including certain disciplinary or legal actions. 15 U.S.C. § 78o-3(i)(1)(A), (i)(5); *see supra* pp. 2–3. In

addition, FINRA is responsible for "adopt[ing] rules establishing an *administrative process* for disputing the accuracy of information provided." *Id.* § 78o-3(i)(3) (emphasis added).

But the Act lacks the sort of "clear and unambiguous . . . rights-creating terms with an unmistakable focus on individuals" that would allow McBride to invoke the power of a federal court, rather than an administrative process, to expunge unfavorable disclosures. *Medina v. Planned Parenthood S. Atl.*, 606 U.S. 357, 358 (2025) (cleaned up). Here, because the Act does not reflect congressional "intent to create . . . a private right [and] a private remedy," the Court "may not create one, no matter how desirable that might be as a policy matter, or how compatible with the statute." *Alexander v. Sandoval*, 532 U.S. 275, 286–87 (2001).

This interpretation is no outlier. "[F]ederal courts have overwhelmingly declined to find the availability of a private right of action against FINRA" where the Exchange Act does not supply one. *Tuberosa*, 2026 WL 25831, at *5 (cleaned up). So, for example, numerous "courts have consistently found Congress's intent under the Exchange Act precludes common law causes of action." *In re Series 7 Broker Qualification Exam Scoring Litig.*, 548 F.3d at 113–14 (citing circuit cases).

The Exchange Act does not permit Plaintiff to sue for expungement relief.

**B. FINRA Rule 2080 Does Not Supply Plaintiff a Cause of Action**

Contrary to Plaintiff's assertions, *see* Dkt. 20 (MTD Opp'n) at 3–6, FINRA itself has no power to conjure a federal cause of action when no statute supplies one. Plaintiff relies on FINRA Rule 2080, which provides that "[m]embers or associated persons seeking to expunge information from the CRD system arising from disputes with customers must obtain an order from a court of competent jurisdiction directing such expungement or confirming an arbitration award containing expungement relief." FINRA Rule 2080(a).

But "private rights of action . . . must be created by Congress." *Alexander*, 532 U.S. at 286. Consequently, circuit courts have repeatedly held that a FINRA regulation alone cannot supply the missing link. *See Desiderio v. Nat'l Ass'n of Sec. Dealers, Inc.*, 191 F.3d 198, 208 (2d Cir. 1999); *Spicer v. Chicago Bd. of Options Exch., Inc.*, 977 F.2d 255, 259 (7th Cir. 1992); *MM&S Fin., Inc. v. Nat'l Ass'n of Sec. Dealers, Inc.*, 364 F.3d 908, 911 (8th Cir. 2004); *Sparta Surgical Corp. v. Nat'l Ass'n of Sec. Dealers, Inc.*, 159 F.3d 1209, 1213 (9th Cir. 1998), *abrogated on other grounds by Merrill Lynch*, 578 U.S. 374; *Turbeville*, 874 F.3d at 1277.[8] That the SEC must approve all FINRA rules, *see* 15 U.S.C. § 78s(b), does not, as Plaintiff suggests, alter the analysis. *See* MTD Opp'n at 13. The SEC is not Congress. The "argu[ment] that . . . *regulations* contain rights-creating language and so must be privately enforceable" ultimately "skips an analytical step." *Alexander*, 532 U.S. at 291.

It is also at least unclear to the Court whether FINRA itself intended, through Rule 2080, to allow an expungement action in federal court. *Cf.* MTD Opp'n at 1, 4. The Rule explains that expungement requires "an order from a court of *competent jurisdiction* directing such expungement or confirming an arbitration award containing expungement relief." FINRA Rule 2080(a) (emphasis added). But it does not elaborate on what courts might have such "competen[ce]." So, the *Tuberosa* court is likely correct that the Rule "simply serves to cabin when FINRA may expunge customer dispute information from CRD." 2026 WL 25831, at *6. That is, the Rule applies to FINRA itself, not to the courts. In any case, for the reasons described above, it makes no difference what FINRA, rather than Congress, intended.

---

[8] Judge Howell's opinion collects other similar district-court cases. *See Tuberosa*, 2026 WL 25831, at *5.

Finally, Plaintiff cites to a state-court and a Western District of Texas case to support his interpretation. *See* MTD Hr'g Tr. at 4; MTD Opp'n at 2–3. Neither binds this Court.[9] And both are distinguishable and unpersuasive. In *Lickiss*, the California Court of Appeals invoked the *state court system*'s "inherent equitable powers to weigh the equities" with respect to expungement from the CRD. *See Lickiss v. FINRA*, 208 Cal. App. 4th 1125, 1135 (2012). And the Court has already set forth the reasons it disagrees with the federal district judge in *Reinking* that Rule 2080 and "the SEC's approval" of Rule 2080's predecessor together "shift final authority on expungement . . . to courts of law." *Reinking v. FINRA*, No. A-11-CA-813-SS, 2011 WL 13113323, at *3 (W.D. Tex. Dec. 1, 2011). In any event, the facts in *Reinking* are distinguishable. There, the individuals who submitted a complaint about the broker "stated in affidavits they had no opposition to expunging the CRD record" following settlement of a related suit they had brought against the broker. *Id*. at *2.[10]

Rule 2080, even read as Plaintiff desires, cannot usurp Congress's powers to create (or decline to create) a private right to suit. The FINRA Rules, however, do not leave Plaintiff entirely without recourse. Plaintiff may seek an arbitral award in favor of expungement, *see* FINRA Rule 13805, or leave Broker Comments in BrokerCheck to accompany the disclosures, *see* FINRA Rule 8312(b)(2)(D).

---

[9] The District of Columbia Court of Appeals opinion dismissing the *Sum-Slaughter* case, *see supra* n.6, does not either. True, as Plaintiff asserts, *see* MTD Opp'n at 6–7, that court ruled that federal courts have *jurisdiction* over Exchange Act claims generally. *See* 320 A.3d at 324. But it never stated that federal courts can definitively provide expungement relief for disclosures in the CRD and BrokerCheck.

[10] Plaintiff's other citations, MTD Opp'n at 3, to "state court decisions about expungement relief in situations unrelated to FINRA or the Exchange Act," such as the expungement of criminal records, are even further afield of our inquiry. *Tuberosa*, 2026 WL 25831, at *7.

**C. Plaintiff May Not Assert Equitable Remedies Absent a Statutory Cause of Action**

Plaintiff tries one last move. He suggests that "principles of equity" "pursuant to the Judiciary Act" nevertheless entitle him to sue here. *See* MTD Opp'n at 13. In his view, the Court should apply an "equitable balancing test" to evaluate the propriety of expungement relief. *Id*.

Plaintiff's requests for equitable relief, declaratory relief, and a permanent injunction are *remedies*, however, not causes of action. *See Ali v. Rumsfeld*, 649 F.3d 762, 778 (D.C. Cir. 2011) (explaining the Declaratory Judgment Act does not provide a cause of action); *Weinberger v. Romero-Barcelo*, 456 U.S. 305, 311 (1982) (explaining that an injunction is a type of equitable remedy). And the "question whether a litigant has a cause of action is analytically distinct and"—even more importantly—"*prior to* the question of what relief, if any, a litigant may be entitled to receive." *Davis v. Passman*, 422 U.S. 228, 239 (1979) (emphasis added) (cleaned up).

Plaintiff's asserted remedies do not amount to a statement of a claim. *See Abdelfattah v. U.S. Dep't of Homeland Sec.*, 787 F.3d 524, 538 (D.C. Cir. 2015).

**D. Leave to Amend**

Lastly, the Court denies Plaintiff leave to amend. A "bare request" to do so, as here, "without any indication of the particular grounds on which amendment is sought," does not pass muster under Federal Rule of Civil Procedure 15(a). *U.S. ex rel. Williams v. Martin-Baker Aircraft Co.*, 389 F.3d 1251, 1259 (D.C. Cir. 2004) (cleaned up); *see* MTD Opp'n at 15. Moreover, naming a nebulous, other "defendant party," as Plaintiff proposes, MTD Opp'n at 15, would not cure the defect the Court has identified—that under these circumstances, no statute authorizes Plaintiffs to sue *any party* for expungement relief. Leave to amend would therefore be futile. *See Rollins v. Wackenhut Servs., Inc.*, 703 F.3d 122, 131 (D.C. Cir. 2012).

## IV. CONCLUSION AND ORDER

For all these reasons, Plaintiff has not established a private right to sue for the expungement of the disclosures to which he objects in the CRD and BrokerCheck. The Court **GRANTS** Defendant's Motion to Dismiss, Dkt. 19. It **DISMISSES** this action with prejudice and **DIRECTS** the Clerk of Court to close this case.

**SO ORDERED.**

This is a final appealable Order. *See* Fed. R. App. P. 4(a).

Date: August 10, 2026

ANA C. REYES
United States District Judge